UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF ILLINOIS

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

9/10/2025

JEFFREY P. ALLSTEADT, CLERK

| | |
|---|---|
| **Marc Rochon a/k/a Indigo Old Corp.,**<br>**Plaintiff,**<br>v.<br>**Thomas P. Guido,**<br>**Defendant.** | Chapter 7<br><br>Case No: 25-06925<br><br>Adversary Case No: 25-00241<br><br>Judge Michael B. Slade |

# FIRST AMENDED COMPLAINT TO OBJECT TO DISCHARGE OF DEBT AND FOR DECLARATORY JUDGMENT

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 523.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), concerning the dischargeability of a specific debt.

3. Venue is proper pursuant to 28 U.S.C. § 1409, as this matter arises in the Defendant's bankruptcy case pending in this District.

## II. PARTIES

4. Plaintiff, Marc Rochon a/k/a Indigo Old Corp., is a business entity with a principal place of business in Georgia.

5. Defendant, Thomas P. Guido, is an individual residing in Illinois who filed for bankruptcy protection under the above-captioned case.

## III. GENERAL FACTUAL BACKGROUND

6. On or about March 17, 2017, Plaintiff and Indigo Studios LLC entered into a Membership Interest Purchase Agreement, partially financed through a $2,000,000 Promissory Note. (Exhibit A)

7. Defendant Guido, as the controlling member of IS Investment LLC (the 'Purchaser'), executed an unconditional and irrevocable Guaranty guaranteeing payment of all amounts owed under the Note. (Exhibit B)

8. Defendant agreed to this Guaranty to induce Plaintiff to proceed with the transaction, and Plaintiff relied on this assurance.

9. The Note required periodic payments of principal and interest, with a maturity date of April 17, 2022.

10. Indigo Studios LLC failed to make a scheduled payment on July 31, 2019, constituting an event of default.

11. On April 17, 2022, the Note matured, and Indigo Studios LLC failed to pay the principal or interest, constituting a second event of default.

12. On September 19, 2024, Indigo Studios LLC formally terminated its legal existence, constituting a third event of default.

13. Defendant is unconditionally liable under the Guaranty for the full amount due.

14. Despite repeated demands, Defendant has failed and refused to honor his obligations.

## COUNT I – ENFORCEABILITY OF GUARANTY

15. The Guaranty executed by Defendant was unconditional and irrevocable.

16. It explicitly provides that it remains enforceable even in the event of insolvency or bankruptcy of the Purchaser.

17. The Guaranty states: *"This Guaranty shall continue to be effective, or be reinstated, if at any time payment by Purchaser is rescinded or otherwise must be returned upon the insolvency, bankruptcy, or reorganization of Purchaser."*

18. The Guaranty further states: *"This Guaranty shall remain in full force and effect and no invalidity, irregularity, or unenforceability (by reason of any bankruptcy or similar law) shall affect or diminish this Guaranty."*

19. This language leaves no ambiguity: Defendant knowingly and explicitly agreed to be personally responsible for the debt regardless of future insolvency or bankruptcy proceedings.

## COUNT II – FRAUDULENT REPRESENTATIONS

20. For approximately eight months leading up to the April 17, 2017 closing, Defendant repeatedly misrepresented material facts to Plaintiff.

21. Defendant claimed personal wealth, ownership of multiple businesses, and strong industry connections.

22. Defendant misrepresented prior business successes and fabricated secured financing.

23. Defendant claimed to own Belwith Products LLC and to have sold it.

24. Defendant presented LinkedIn bios and documents asserting he was a partner at JVA Partners LLC from 2006–2016.

25. In reality, Defendant was never a partner at JVA Partners, which publicly refuted his claims in 2019. **(Exhibit C)**

26. Defendant and Peter Stamos boasted about increasing revenue to $20 million through nonexistent connections.

27. Defendant misrepresented that he had already secured bank financing.

28. In truth, Plaintiff was pressured into a 'dry closing' on March 17, 2017.

29. A Subordination Agreement was added post-closing, which Defendant used to avoid paying Plaintiff as required by the Note.

30. On April 17, 2017, when Plaintiff asked Defendant *"What happens if you run the studio into the ground?"* Defendant stated in Indigo Studios' conference room: *"Don't worry. If anything goes wrong, I'll just pay it."*

31. Defendant lacked the financial capacity to do so, as later documents revealed. **(Exhibit E)**

32. Plaintiff relied on these misrepresentations and suffered damages.

## COUNT III – FRAUDULENT INDUCEMENT OF GUARANTY

33. Plaintiff informed Defendant that the deal was contingent on an unconditional personal guaranty.

34. Defendant eagerly agreed, reinforcing Plaintiff's belief that the guaranty would be enforceable and meaningful.

35. The Guaranty expressly states it was given as an inducement for Plaintiff to enter the transaction.

36. Defendant's fraudulent inducement caused Plaintiff to accept the deal to his detriment.

## COUNT IV – FRAUD BY OMISSION

37. A material fact is one that a reasonable person would consider important when deciding whether to enter into a transaction.

38. Defendant omitted that he was actively being sued by Belwith Products LLC for misrepresentation during negotiations.

39. Defendant concealed that CAP G Partners, the entity through which he acted, was a shell company with no financial standing.

40. Defendant falsely presented himself as having "retired twice," suggesting financial security and liquidity.

41. Defendant regularly began conversations with references such as *"when I owned Belwith"* or *"when I sold Belwith,"* further misleading Plaintiff.

42. These omissions were intended to induce reliance, and Plaintiff entered the transaction based on this crafted false narrative.

## COUNT V – NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

43. Plaintiff incorporates all preceding paragraphs by reference.

44. Under 11 U.S.C. § 523(a)(2)(A), debts obtained through false pretenses, false representation, or actual fraud are not dischargeable.

45. Defendant's conduct meets all required elements of nondischargeability:

46. Defendant made false representations regarding his financial standing and business credibility.

47. Defendant knew that these statements were false.

48. Defendant intended to deceive Plaintiff.

49. Plaintiff justifiably relied on Defendant's assurances and omissions.

50. Plaintiff suffered significant losses due to Defendant's default.

## COUNT VI – DECLARATORY JUDGMENT
51. An actual controversy exists between Plaintiff and Defendant regarding enforceability and dischargeability of the Guaranty.

52. Plaintiff seeks a declaration that Defendant's obligations under the Guaranty remain valid and enforceable.

53. Plaintiff seeks a declaration that Indigo Studios LLC is in default under the Note triggering guaranteed obligations of the Defendant.

54. Plaintiff seeks a declaration that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## CONCLUSION

The evidence overwhelmingly establishes that Mr. Guido engaged in deliberate fraud before the closing of this deal on April 17, 2017. Through false representations, misleading omissions, and outright fabrications, he manipulated Mr. Rochon into believing he was entering into a secure and lucrative transaction. Mr. Rochon, relying on Mr. Guido's fraudulent claims, agreed to the deal under the false assumption that Mr. Guido was a credible, financially stable investor with industry experience and established business connections.

Had Mr. Rochon been aware of the truth—that Mr. Guido had no prior ownership of companies, no secured financing, no business expertise in the creative industry, and was actively being sued for misrepresentation—he would never have entered into this agreement. The fraudulent inducement resulted in severe financial harm, and it is clear that Mr. Guido's misrepresentations were intentional and designed to deceive. Mr. Rochon placed his trust in Mr. Guido's word, only to be defrauded at every turn.

Furthermore, Mr. Guido has a demonstrated history of fraud, non-payment, and deception. He repeatedly misrepresents his financial standing, engages in fraudulent business dealings, and ultimately is relying on the bankruptcy courts to erase his obligations and start over again.

Given the unambiguous language of the agreed-upon personal guaranty, Mr. Guido must remain responsible for the debt he willingly committed to. His fraudulent conduct should not be rewarded with the opportunity to evade accountability through the bankruptcy system.

Even now Mr. Guido continues to misrepresent himself on his experience on social media to make him look like a credible and business-savvy investor and executive. **(Exhibit D)**

## PRAYER FOR RELIEF
WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare Defendant's debt to Plaintiff nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

b. Declare that the Guaranty remains enforceable against Defendant;

c. Declare that Indigo Studios LLC is in default under the Note;

d. Award Plaintiff all allowable fees and costs; and

e. Grant such other relief as the Court deems just and proper.

**Dated:** September 8, 2025
**Respectfully submitted,**
**Marc Rochon a/k/a Indigo Old Corp. Pro Se**
204 Mayglen Ct, Woodstock, GA 30189
marc@rochonphotographic.com
(678) 592-9911

**Marc Rochon v Thomas P Guido**          **Adv Proc No: 25-00241**

## CERTIFICATE OF SERVICE

I, Marc Rochon, hereby certify that on 9-08-2025, I caused a true and correct copy of the following documents:

- First Amended Complaint to Object to Discharge and Declaratory Judgement (with exhibits)
- Adversary Proceeding Cover Sheet
- Summons in an Adversary Proceeding
- This Certificate of Service

to be served upon the following parties by [first class U.S. mail / electronic service through CM/ECF, if applicable]:

**Debtor:**
Thomas Patrick Guido (via first class U.S. mail)
320 Park Lane
Lake Bluff, IL 60044

**Debtor's Attorney: Pro Se**


**Chapter 7 Trustee:**
Miriam Stein Granek, Trustee (via CM/ECF)
4711 Golf Road, Suite 200
Skokie, IL 60076

**United States Trustee:**
Office of the United States Trustee
219 S. Dearborn St., Room 873
Chicago, IL 60604

I certify under penalty of perjury that the foregoing is true and correct.

Dated: 9-8-2025
Respectfully submitted,

**/s/ Marc Rochon**
Marc Rochon
204 Mayglen Ct
Woodstock, GA 30189
678-592-9911
marc@rochonphotographic.com
**Creditor, Pro Se**

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date    9-8-2025                  Signature _____

Print        MARC ROCHON

Name:        204 MAYGLEN CT

Business     WOODSTOCK GA

Address:              30189

B1040 (FORM 1040) (12/24)          **FIRST AMENDED ADVERSARY COVER SHEET**

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) 25-241 |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Marc Rochon | Thomas P. Guido |

| ATTORNEYS (Firm Name, Address, and Telephone No.) Marc Rochon 204 Mayglen Ct, Woodstock GA 30189 678-592-9911 | ATTORNEYS (If Known) Pro Se |
|---|---|

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| □ Debtor   ☑ U.S. Trustee/Bankruptcy Admin | x Debtor   □ U.S. Trustee/Bankruptcy Admin |
| x Creditor   □ Other | □ Creditor   □ Other |
| ☑ Trustee | ☑ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This action arises under **11 U.S.C. § 523(a)(2)(A)** to determine the *nondischargeability* of a debt obtained through **false pretenses, false representations, and actual fraud.** The Defendant, Thomas P. Guido, knowingly and intentionally misrepresented material facts and omitted critical information in order to fraudulently induce the Plaintiff, Marc Rochon a/k/a Indigo Old Corp., into a transaction involving a $2,000,000 Promissory Note, personally guaranteed by Defendant. The obligations under the Guaranty remain enforceable despite the bankruptcy filing, pursuant to its express language. Jurisdiction is proper under **28 U.S.C. § 1334**, venue under **28 U.S.C. § 1409**, and this matter is a core proceeding under **28 U.S.C. § 157(b)(2)(I).**

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| FRBP 7001(a) – Recovery of Money/Property | FRBP 7001(f) – Dischargeability (continued) |
|---|---|
| □ 11-Recovery of money/property - §542 turnover of property | □ 61-Dischargeability - §523(a)(5), domestic support |
| □ 12-Recovery of money/property - §547 preference | ☑ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| □ 13-Recovery of money/property - §548 fraudulent transfer | □ 63- Dischargeability - §523(a)(8), student loan |
| □ 14-Recovery of money/property - other | □ 64- Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support) |
| **FRBP 7001(b) – Validity, Priority or Extent of Lien** | □ 65- Dischargeability - other |
| □ 21-Validity, priority or extent of lien or other interest in property | |
| | **FRBP 7001(g) – Injunctive Relief** |
| **FRBP 7001(c) – Approval of Sale of Property** | □ 71-Injunctive relief – imposition of stay |
| □ 31-Approval of sale of property of estate and of a co-owner - §363(h) | □ 72-Injunctive relief – other |
| **FRBP 7001(d) – Objection/Revocation of Discharge** | **FRBP 7001(h) Subordination of Claim or Interest** |
| ☒ 41-Objection / revocation of discharge - §727(c),(d),(e) | □ 81-Subordination of claim or interest |
| **FRBP 7001(e) – Revocation of Confirmation** | **FRBP 7001(i) Declaratory Judgment** |
| □ 51-Revocation of confirmation | ☑ 91-Declaratory judgment |
| **FRBP 7001(f) – Dischargeability** | **FRBP 7001(j) Determination of Removed Action** |
| □ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | □ 01- Determination of removed claim or cause |
| ☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud | **Other** |
| □ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | □ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.* |
| **(continued next column)** | □ 02- Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $2,660.931.51 |

| Other Relief Sought | Defendant's obligations under the Guaranty remain valid and enforceable; The debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A); Plaintiff is entitled to pursue all available remedies for collection of the debt. |
|---|---|

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR Thomas P Guido | BANKRUPTCY CASE NO.<br>25-06925 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Illinois | DIVISION OFFICE<br>Bankruptcy | NAME OF JUDGE<br>Hon Michael B Slade |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>Marc Rochon | DEFENDANT<br>Thomas P Gudio | ADVERSARY<br>PROCEEDING NO.<br>25-00241 |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Northern District of Illinois | DIVISION OFFICE<br>Bankruptcy | NAME OF JUDGE<br>Hon Michael B Slade |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>9-8-2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>MARC ROCHON | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# EXHIBIT A

<u>EXHIBIT D</u>

Form of Promissory Note

**EXHIBIT D**
**PROMISSORY NOTE**

$2,000,000.00

Lake Forest, Illinois, April 17, 2017
Due April 17, 2022

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of INDIGO STUDIOS, INC., a Georgia corporation ("Lender"), at its principal place of business at 660 11th St. N.W. Atlanta, Georgia, or such other place as Lender may designate in writing from time to time hereafter, the principal sum of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) (the "Loan"). The Loan shall be due and payable on or before April 17, 2022 (the "Maturity Date").

The unpaid balance of Maker's obligations and liabilities to Lender pursuant to the terms of this Promissory Note (this "Note") shall bear interest from the date hereof until paid, computed at a fixed rate per annum equal to four percent (4%) (the "Loan Rate"). The Loan Rate shall be simple interest. There shall be no payments of principal or interest on this Note for a period of two (2) years from the date hereof. In the first month following the second anniversary hereof, Maker shall pay Lender a single sum equal to all interest accrued through such second anniversary. Thereafter, the principal sum of this Note shall be paid in twelve (12) consecutive, uninterrupted, and substantially equal quarterly installments, with the first such installment to be paid at the end of the third month following the second anniversary hereof, and the remaining installments to be paid thereafter on a quarterly basis until the principal sum of this Note shall have been paid in full. Each such payment of principal shall be accompanied by payment of all unpaid interest accrued hereunder as of such date. If a payment hereunder becomes due and payable on a Saturday, Sunday or legal holiday under the laws of the State of Illinois or Georgia, the payment due date thereof shall be extended to the next succeeding business day.

After the Maturity Date, or the earlier acceleration of the indebtedness evidenced by this Note, or if said indebtedness has not been accelerated, during any period in which an Event of Default (as hereinafter defined) exists pursuant to the terms of this Note, Maker shall pay interest on the balance of principal remaining unpaid during any such period at an annual rate equal to three percent (3%) plus the Loan Rate. The interest accruing under this paragraph shall be immediately due and payable by Maker to the holder of this Note and shall be additional indebtedness evidenced by this Note.

All payments and prepayments on account of the indebtedness evidenced by this Note shall be first applied to accrued and unpaid interest on the unpaid principal balance of this Note, and the remainder, if any, to said unpaid principal balance. Any prepayment on account of the indebtedness evidenced by this Note shall not extend or postpone the due date of any payment due on the Maturity Date.

THIS NOTE MAY BE PREPAID IN WHOLE OR IN PART BY MAKER AT ANY TIME WHATSOEVER WITHOUT PENALTY OR PREMIUM OF ANY KIND.

{34893: 004: 02052799.DOC :3 }

This Note is the instrument referred to in that certain Membership Interest Purchase Agreement dated as of March 15, 2017, by and between Maker and Lender (the "Purchase Agreement").

The occurrence of any of the following events shall result in an "Event of Default" pursuant to the terms of this Note: (1) Maker's failure to pay the principal and interest amount due on or before the Maturity Date ; (2) dissolution, termination of existence or insolvency of the Company; (3) a Change in Control of Maker (as defined below), (4) the death of Thomas P. Guido ("Guarantor"); or (5) the appointment of a receiver for any part of the property of Maker or Guarantor, the making by either Maker or Guarantor of an assignment for the benefit of creditors, or the initiation by or against either Maker or Guarantor of any proceeding under the Federal Bankruptcy Code or any state insolvency law, not stayed or released in sixty (60) days. For purposes hereof, a "Change in Control of Maker" shall be deemed to have occurred if (a) any person or group of persons not a member of Maker at the execution of this Agreement is or becomes the "beneficial owner" of more than fifty percent (50%) of all of the membership interests of Maker other than a transfer to a living trust for estate planning purposes.

Upon the occurrence of an Event of Default, at Lender's option: (i) all amounts due and owing from Maker to Lender under this Note shall be due and payable forthwith, and (ii) Lender may exercise any one or more of the rights and remedies available at law or in equity upon default by a debtor. If any suit or action is instituted or attorneys are employed to collect this Note or any part thereof, the prevailing party in such dispute shall be entitled to costs and expenses incurred, including reasonable attorneys' fees and expenses, in connection with such dispute.

Maker hereby (i) waives presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor, and notice of protest; (ii) waives any and all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default, or enforcement of the payment hereof or hereunder; and (iii) waives any and all lack of diligence and delays in the enforcement of the payment hereof.

Failure to exercise any option with respect to an Event of Default shall not constitute a waiver of the right to exercise same in the event of any subsequent Event of Default. No holder hereof shall, by any act of omission or commission, be deemed to waive any of its rights, remedies, or powers hereunder or otherwise unless such waiver is in writing and signed by the holder hereof, and then only to the extent specifically set forth therein. The rights, remedies, and powers of the holder hereof, as provided in this Note are cumulative and concurrent, and may be pursued singly, successively, or together against the Maker at any time, all at the sole discretion of the holder hereof.

Time is of the essence hereof.

This Note is governed and controlled as to validity, enforcement, interpretation, construction, effect, and in all other respects by the internal statutes, laws, and decisions of the State of Illinois, and not the laws of conflicts. This Note may not be changed or amended orally, but only by an instrument in writing signed by the party against whom enforcement of the change

or amendment is sought. This Note shall be binding on Maker and its successors, and shall inure to the benefit of Lender, its successors and assigns. Any reference to the Lender shall include any holder of this Note. This Note, the Purchase Agreement and any related documents embody the entire agreement between Maker and Lender regarding the terms of the Loan and supersede all oral statements and prior writings relating to the Loan.

In the event one or more of the provisions contained in this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

In no contingency or event whatsoever shall the interest rate charged hereunder exceed the highest rate permissible under any law which a court of competent jurisdiction shall, in a final determination, deem applicable hereto. In the event that such a court determines that the Lender has received interest hereunder in excess of the highest rate applicable hereto, the Lender shall promptly refund such excess interest to Maker.

MAKER, IRREVOCABLY, AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR FROM OR RELATED TO THIS NOTE SHALL BE LITIGATED IN COURTS HAVING SITUS WITHIN THE COUNTY OF COOK, STATE OF ILLINOIS. MAKER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SAID COUNTY AND STATE. MAKER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST MAKER BY LENDER IN ACCORDANCE WITH THIS PARAGRAPH.

MAKER IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (I) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS NOTE OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH, OR (II) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH OR RELATED TO THIS NOTE OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

IS INVESTMENT, LLC,
a Delaware limited liability company

By: _____
     Thomas P. Guido, its Manager

# EXHIBIT B

<u>EXHIBIT E</u>

Form of Guaranty

## GUARANTY

The undersigned, Thomas P. Guido, individually ("Guarantor"), is the controlling member of IS Investment, LLC (the "Purchaser").

Purchaser is acquiring one hundred percent (100%) of the membership interests of Indigo Studios, LLC (the "Interests") from Indigo Studios, Inc., a Georgia corporation ("Seller"), pursuant to the terms of a certain Membership Interest Purchase Agreement, dated as of March 17, 2017 (the "PA"). Pursuant to the terms of Section 2.02 of the PA, Purchaser is executing a certain Promissory Note in the principal amount of TWO MILLION NO/100 DOLLARS ($2,000,000.00) in favor of Seller (the "Note") in partial consideration of the purchase price for the Interests. Seller is requiring as a condition to the sale of the Interests and the delivery and acceptance of the Note that Guarantor execute this Guaranty.

Therefore, as an inducement to the Seller to convey the Interests to Purchaser and the extension of financial accommodations to Purchaser, Guarantor does absolutely, unconditionally and irrevocably guarantee to Seller the payment of all amounts owed Seller pursuant to the Note (such payments sometimes hereinafter referred to as the "Guaranteed Obligations").

Upon any failure by Purchaser to timely make payment as required under the Note, Seller may at its option proceed in the first instance against Guarantor to require full and prompt payment and performance of the Guaranteed Obligations, without first proceeding against Purchaser.

The undersigned does hereby waive any and all requirements of notice of the acceptance of this Guaranty and all requirements of notice of breach of non-performance by Purchaser. The undersigned further waives any demand by Seller and/or prior action by Seller of any nature whatsoever against Purchaser. Guarantor's obligations hereunder shall remain fully binding and shall not be impaired or discharged although Seller may have waived one or more defaults by Purchaser or granted indulgences to Purchaser, or extended the time of performance by Purchaser, modified or amended the Note, extended or renewed the Note or released Purchaser from the performance of its obligations under such Note, or failed or neglected to exercise any of Seller's rights against Purchaser, notwithstanding that Guarantor may not have consented thereto or may not have notice or knowledge thereof.

This Guaranty shall be governed and construed under the internal laws, and not the laws of conflicts, of the State of Illinois. This Guaranty shall be construed as an absolute, unconditional, continuing and unlimited Guaranty of the Guaranteed Obligations, without regard to regularity, validity or enforceability of any liability or obligation of Purchaser hereby guaranteed. Seller shall not be obligated to proceed first against Purchaser or any other person, firm or corporation or against any collateral, if any, held by or on behalf of the Seller and the undersigned shall be bound on this Guaranty to Seller as if Purchaser's obligations under the Note were the primary obligation of Guarantor. Guarantor shall not be

entitled to raise any defense in any action to enforce this Guaranty which Purchaser could raise. It is the intention of this Guaranty that Guarantor shall remain liable as principal, to and until all of the Guaranteed Obligations shall been fully repaid to Seller and/or performed, notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of Guarantor. This Guaranty shall be binding upon the Guarantor and its successors and assigns.

This Guaranty shall continue to be effective, or be reinstated (as the case may be), if at any time payment by Purchaser of all or any part of any sum payable pursuant to the Note, as the case may be, is rescinded or otherwise must be returned by Seller upon the insolvency, bankruptcy, or reorganization of Purchaser all as though such payment to Seller had not been made.

This Guaranty shall remain in full force and effect and no invalidity, irregularity, or unenforceability (by reason of any bankruptcy or similar law, any other law or any order of any government or agency thereof purporting to reduce, amend, or otherwise affect any indebtedness or liability of Purchaser or of any security therefor) and no release or discharge of Purchaser in any receivership, bankruptcy, winding-up, or other creditor proceedings shall affect, diminish, or impair or otherwise be a defense to this Guaranty.

Guarantor hereby agrees that all actions or proceedings arising directly or indirectly hereunder may, at the option of Seller, be litigated in courts situated within the State of Illinois and Guarantor hereby expressly consents to the jurisdiction of any local, state or federal court located within the State of Illinois and consents that any service of process in such action or proceeding may be made by certified or registered mail to Guarantor at the address specified below.

In the event there is a dispute between Seller and Guarantor regarding the Guaranteed Obligations, the prevailing party in such dispute shall be entitled to costs and expenses incurred, including reasonable attorneys' fees and expenses, in connection with such dispute.

No delay on the part of Seller in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Seller of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy. No action of Seller permitted hereunder shall in any way affect or impair the rights of Seller or the obligation of Guarantor.

Guarantor represents that this Guaranty constitutes the legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms. This Guaranty may not be modified, amended, revised, revoked, terminated, changed or varied in any way whatsoever except by the express terms of a writing signed by Seller and the Guarantor. In the event any one or more of the provisions contained in this Guaranty shall for any reason be held to be invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, Guarantor agrees that such invalidity, illegality or unenforceability shall not affect any other provision of this Guaranty, and this Guaranty shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

{34893: 004: 02052800.DOC :3 }                    2

Guarantor shall be individually, jointly and severally liable with Purchaser for the Guaranteed Obligations.

GUARANTOR IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (I) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS NOTE OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH, OR (II) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

IN WITNESS WHEREOF, the undersigned has caused this Guaranty to be executed as of April 17, 2017.

_____
Thomas P. Guido, individually

Address:     100 S. Saunders Road
             Suite 150
             Lake Forest, IL 60045

{34893: 004: 02052800.DOC :3 }                    3



# THOMAS P. GUIDO : EMPLOYMENT CLARIFICATION

In his LinkedIn profile Mr Thomas P Guido misrepresents his past employment and role with JVA Partners LLC. (the firm) as "Partner from 2006 to 2016." For the record, Mr Guido has never been an employee or member of the firm.  Mr Guido was an employee of Belwith Management Inc. (BMI), an affiliate of JVA Partners LLC., in the position of General Manager and CFO of BMI from 2009 through June 2016 when he was terminated for cause. Consistent with his BMI employment agreement. Mr Guido was allowed to use the title of "JVA Partner" only for specific assignments for the firm during the period between 2014 and his termination in 2016.

JVA Partners LLC

Copyright © 2018 Employment Facts - All Rights Reserved.

Powered by GoDaddy GoCentral Website Builder



**Thomas Guido** ✓ · 1st
CEO | Leadership | Privately-Held Companies
Greater Chicago Area · Contact info
500+ connections

Gary Book, Maureen Buxton, and 31 other mutual connections

◀ Message    More          Mr Guido changed is LinkedIn experiences in Nov of 2025.

**C** Capital G Partners

University of Chicago
Graduate School of...

EXHIBIT D

### Highlights

 **You both worked at Indigo Studios**
You both worked at Indigo Studios in January
2017

✦ Ask about experience

**2 mutual groups**
You and Thomas are both in 3ds Max and Visual
Effects, Animation and Games Professionals
(www.vfxwire.com)

### About

Accomplished CEO of middle market businesses with over 20 years of experience.

Diverse background includes; Leadership, Business Strategy & Execution, Business Growth & Operational Excellence,
and Finance & M&A in; Manufacturing, Business Services, and Technology-based companies.

### Activity

2,121 followers

Posts    Comments

 **Thomas Guido** · 1st
CEO | Leadership | Privately-Held Com
7mo · 🌐

Teamwork!

 **Goodbit**
348 followers

We had a lot of fun UNLOCKING amazing
creative for Hewlett Packard Enterprise  more

 **Thomas Guido** · 1st
CEO | Leadership | Privately-Held Com
1yr · 🌐

Outstanding collaboration!

 **Goodbit**
348 followers

Experience sound the right way. , ,

## Experience

 **Founder and Managing Partner**
Capital G Partners
2006 - Present · 19 yrs 3 mos
Greater Chicago Area

This is not correct. Cap G Partners has not been around for 19ys.
You can see from Mr Stamos's profile it has only been around
8yrs and it may not be a registered entity.

Capital G Partners is a private investment and advisory firm.

 **CEO**
Goodbit
2023 - 2024 · 1 yr
Chicago · Hybrid

He WAS NOT the CEO of Goodbit

Goodbit is a creative production studio.

 **CEO**
Indigo Studios
2017 - 2024 · 7 yrs
Atlanta, GA

He WAS NOT the CEO of Indigo Studios.
Peter Stamos was.

Indigo ia a post-production studio.

 **Investor Owner-Operator**
Belwith Keeler Decor Solutions
2008 - 2017 · 9 yrs
Grand Rapids, MI

He did not own Belwith.  He may of had a stake in it
but he was not "the owner"
I believe he may have had a 10% stake.

Belwith is a leader in home decor and decorative hardware.

 **Managing Director**
Wynnchurch Capital, LLC
2001 - 2006 · 5 yrs
Greater Chicago Area

Wynnchurch is a middle-market private equity fund.

PREVIOUS EXPERIENCE:
Fleet Capital, Vice President
Sanwa Business Credit Corporation, Vice President
The Northern Trust Company, Investment Analyst



 

## Peter Stamos ✔ · 1st

Accomplished business leader with track record of delivering strategic business management expertise and catalyzing exponential organizational growth and ensuring operational excellence.

Alpharetta, Georgia, United States · Contact info

500+ connections

Gary Book, Maureen Buxton, and 35 other mutual connections

✈ Message      More

AAG Consulting Group

NYU Stern School of Business

## Highlights

 **You both worked at Indigo Studios**
You both worked at Indigo Studios in April 2017

✦ Ask about experience

 **1 mutual group**
You and Peter are both in Visual Effects, Animation and Games Professionals (www.vfxwire.com)

## About

Performance-driven professional accustomed to the rigors of fast-paced, highly regulated environments requiring sharp attention to detail, consummate accuracy, and outstanding analytical skills. Works to deliver results while partnering with staff to accelerate the achievement of immediate and long-range goals.

...see more

...

## Activity

1,227 followers

**Posts**      Comments

 **Peter Stamos · 1st**
Accomplished business leader with tra..
1mo · 🌐

Some really good insights here from a Georgia based commercial contractor. Up and coming company and young man at the helm.

 **Bryceton Payne · 2nd**

 **Peter Stamos · 1st**
Accomplished business leader with tra..
3mo · 🌐

Quality people, Quality company. If you are in Georgia or anywhere in the Southeast, in need of construction services, they would love th ...more

 **B.H. Payne Construction, Inc. ...**

← **Experience**

### Executive Consultant

AAG Consulting Group · Freelance
Jul 2023 - Present · 1 yr 9 mos
United States · Remote

We're dedicated to helping B2B consumer-centric tech companies maximize revenue and uncover blue ocean opportunities. We have "walked in your shoes", with the real-world experience to navigate the optimal path forward.

Our team of accomplished multi-disciplinary advisors, the 'Avengers' for business, use their growth-driving superpowers and proven methodologies to accelerate market leadership, create value, and drive profitable growth.

Skills: Revenue Analysis · Fundraising · Building Performance · Mentoring · CEOs · Helping People · Exit Process · High Level Of Accuracy · Cloud Infrastructure · Cross-functional Team Leadership · Relationship Development · Financial Literacy · Change Management · Mergers & Acquisitions (M&A) · People Development · Negotiation · Market Research · Revenue & Profit Growth · Business Acumen · Executive Leadership · Problem Solving · Business Operations · Customer Engagement · Public Speaking · Partner Relationship Management · Decision-Making · Digital Transformation · Software as a Service (SaaS) · Business Insights · Multiple Projects Simultaneously · Growth Strategies · P&L Analysis · Management Consulting · Sales Strategy · Strategic Thinking · Private Equity · Attention to Detail · Communication · Presentation Skills · Outbound Sales · Strategy Implementation

### Advisory Board Member

Indigo Studios · Self-employed
Apr 2017 - Present · 8 yrs
Greater Atlanta Area

Peter served as CEO from April 2017 – May 2022. Indigo Studios is a full-service design studio with offices in Atlanta, GA, Detroit and London UK. Our team creates stunning and dynamic design solutions from concept to completion. We specialize in 3D, CGI animation, motion graphics, photography, retouching, software application development and branding.

Skills: Mentoring · CEOs · High Level Of Accuracy · Cross-functional Team Leadership · Relationship Development · Brand Awareness · Coaching · Change Management · Negotiation · Market Research · Oral Communication · Problem Solving · Business Operations · Customer Engagement · Decision-Making · Digital Transformation · Business Insights · Growth Strategies · P&L Analysis · Consulting · Working with Investors · Management Consulting · Strategic Thinking · Private Equity · Attention to Detail · Communication · Board of Directors · Presentation Skills · Outbound Sales · Strategy Implementation

### Operating Partner

Capital G Partners · Full-time
Jan 2017 - Present · 8 yrs 3 mos
Atlanta GA

Skills: Revenue Analysis · Business Advising · CEOs · Helping People · High Level Of Accuracy · Cross-functional Team Leadership · Sales Leadership · Relationship Development · Brand Awareness · Solution Selling · Analytical Skills · General Management · Financial Literacy · Change Management · Mergers & Acquisitions (M&A) · Negotiation · Market Research · Revenue & Profit Growth · Business Acumen · Oral Communication · Business Strategy · Executive Leadership · Problem Solving · Business Operations · Customer Engagement · Executive Management · Revenue Forecasting · Operations · Public Speaking · Business Management · P&L Management · Partner Relationship Management · Decision-Making · Team Leadership · Sales Growth · Business Insights · Multiple Projects Simultaneously · Growth Strategies · P&L Analysis · Consulting · Working with Investors · Sales Strategy · Strategic Thinking · Private Equity · Attention to Detail · Communication · Sales Operations · Presentation Skills · Outbound Sales · Strategy Implementation

### Chief Growth Officer

Mvix Digital Signage · Full-time
Sep 2022 - Mar 2023 · 7 mos
Sterling, Virginia, United States

Mvix Digital Signage · Full-time
Sep 2022 - Mar 2023 · 7 mos
Sterling, Virginia, United States

**Skills:** Revenue Analysis · Business Advising · Customer Relationship Management (CRM) · Demos · Mentoring · Channel Partners · High Level Of Accuracy · Sales Leadership · Sales Management · Relationship Development · Solution Selling · Analytical Skills · Coaching · People Development · Negotiation · Revenue & Profit Growth · People Management · Business Acumen · Oral Communication · Business Strategy · Executive Leadership · Problem Solving · Business Operations · Customer Engagement · Executive Management · Revenue Forecasting · Business Management · Partner Relationship Management · Decision-Making · Team Leadership · Sales Growth · Software as a Service (SaaS) · Growth Strategies · Consulting · Sales Strategy · Strategic Thinking · Customer Acquisition · Private Equity · Attention to Detail · Communication · Sales Operations · Presentation Skills · Outbound Sales



### President & CEO
Ping HD

Jan 2012 - May 2022 · 10 yrs 5 mos
Greater Denver Area

As a President/CEO, formulated long- and short-term strategies, established strategic priorities, and directed day-to-day business operations. Effectively managed new CMS software development, raised brand awareness, and led sales operations in support of different Ping HD vertical market initiatives. Coordinated with a diverse clientele and methodically activated a flexible and cost-effective digital signage offering across multiple industries.

Below is one of my notable contributions:
· Grew revenues by more than 20% on YoY basis since 2012 and spearheaded sell side M&A efforts. which resulted in a valuation at sale of 10X earnings. Maximized shareholder value.

**Skills:** Revenue Analysis · Customer Relationship Management (CRM) · Fundraising · Demos · Building Performance · Mentoring · CEOs · Channel Partners · Helping People · Exit Process · High Level Of Accuracy · Cloud Infrastructure · Cross-functional Team Leadership · Sales Leadership · Sales Management · Relationship Development · Brand Awareness · Solution Selling · Analytical Skills · General Management · Financial Literacy · Coaching · Change Management · Mergers & Acquisitions (M&A) · People Development · Negotiation · Market Research · Revenue & Profit Growth · People Management · Business Acumen · Sales & Marketing · Oral Communication · Business Strategy · Executive Leadership · Problem Solving · Business Operations · Customer Engagement · Executive Management · Revenue Forecasting · Operations · Public Speaking · Business Management · P&L Management · Partner Relationship Management · Decision-Making · Team Leadership · Digital Transformation · Sales Growth · Software as a Service (SaaS) · Business Insights · Multiple Projects Simultaneously · Growth Strategies · Working with Investors · Sales Strategy · Strategic Thinking · Customer Acquisition · Private Equity · Attention to Detail · Communication · Sales Operations · Presentation Skills · Outbound Sales · Strategy Implementation



### EVP, Chief Sales & Marketing Officer
Miller Zell

Mar 2007 - Jun 2011 · 4 yrs 4 mos

Miller Zell is one of the largest fully integrated Retail Services Agencies in North America.
Led sales and marketing teams that grew revenues over 50% in a four year span.

**Skills:** Revenue Analysis · Customer Relationship Management (CRM) · Building Performance · Mentoring · Helping People · High Level of Accuracy · Cross-functional Team Leadership · Sales Leadership · Sales Management · Relationship Development · Solution Selling · Analytical Skills · General Management · Financial Literacy · Coaching · People Development · Negotiation · Market Research · Revenue & Profit Growth · People Management · Business Acumen · Sales & Marketing · Oral Communication · Business Strategy · Executive Leadership · Problem Solving · Business Operations · Customer Engagement · Executive Management · Revenue Forecasting · Public Speaking · Business Management · P&L Management · Partner Relationship Management · Decision-Making · Team Leadership · Sales Growth · Business Insights · Multiple Projects Simultaneously · Growth Strategies · P&L Analysis · Working with Investors · Sales Strategy · Strategic Thinking · Customer Acquisition · Attention to Detail · Communication · Sales Operations · Presentation Skills · Outbound Sales · Strategy Implementation



### Principal
VSC

Jan 2002 - Mar 2007 · 5 yrs 3 mos

# Response to Document Request and Temporary Point of Contact

Show all messages in this conversation

**To:** Marc Rochon,  **Cc:**  Adam P. Silverman

Guido - Rochon Doc...
294.2 KB

Download All · Preview All

Thursday, July 3, 2025 at 10:52 AM

Show Reply

You replied to this message on 7/3/25, 2:55 PM.

Marc,

I am sending this email to provide you with Tom's response to your document request. The requested documents are attached, along with the narrative below.

I will be out of the country starting today and will return on July 21. In my absence, my colleague Adam Silverman will handle this matter. He will appear at your Rule 2004 hearing and at the continued meeting of the creditors under Section 341.

If you have any additional requests, please contact Adam directly and copy me so I can remain informed.

**Narrative of Assets (as estimated at that time):**

1. The value of Tom's real property stems solely from his primary residence and home: $600,000
2. The value of the Fidelity accounts:
   o Brokerage: $41,000
   o Roth accounts: $20,000
   o UTMA account for one of the children: $6,000
   o Total: $66,000
3. The value of the Merrill Lynch IRA: $577,000
4. The balance of the checking and savings accounts: $166,000

**Tevin D. Bowens, Associate**

**ADELMAN & GETTLEMAN LTD**
53 W. Jackson Blvd., Suite 1050, Chicago, IL 60604
℡: 312.435.1050 | ✉: tbowens@ag-ltd.com
website | linkedin | biography



# Exhibit E